UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ESTHER CORRALES,

     Plaintiff,

v.

                                  Case No.: 2:23-cv-228-JLB-NPM

WAL-MART STORES EAST, LP,

     Defendant.

_____/

## ORDER

In this Florida negligence case, Plaintiff Esther Corrales ("Plaintiff" or "Ms. Corrales") alleges she fell to the ground after slipping in a puddle of liquid in the women's restroom at a Wal-Mart in Clewiston, Florida.  Before the Court is the Motion for Summary Judgment filed by Defendant Wal-Mart Stores East, LP ("Defendant" or "Walmart").  (Doc. 30).  Ms. Corrales submitted a response in opposition (Doc. 35), and Walmart filed a reply (Doc. 37).  After a careful review of the parties' briefings and the record, the Court concludes that Defendant's Motion is due to be **GRANTED**.

## BACKGROUND

On or about May 25, 2018, Plaintiff visited a Walmart store located at 1005 W. Sugarland Highway in Clewiston, Florida (the "Store") with her daughter-in-law and grandchildren.  (Doc. 3 at ¶ 14; Doc. 4 at ¶ 14; Doc. 30-4 at 31:12–31:24).  Plaintiff escorted her grandson to Walmart's restroom during this visit.  (Doc. 30-4

1

at 38:11–39:6; Doc. 30-5 at 6:10:13 P.M.).[1]  According to Plaintiff, shortly after

entering the women's restroom, she slipped and fell on the floor.  (Doc. 30-4 at

43:12–43:21).  Plaintiff testified in her deposition that, after falling, she discovered

that the floor was "totally wet" with multiple puddles of "water spread . . . all over

the floor," but that she did not notice this prior to her fall.  (Doc. 30-4 at 45:1–45:9,

46:4–48:9).  Plaintiff further testified that she did not see where the water came

from.  (Doc. 30-4 at 49:13–49:19).

Less than 30 seconds after Plaintiff fell, her daughter-in-law, Dayana Abreu

("Ms. Abreu"), entered the restroom.  (Doc. 30-5 at 6:10:49 P.M.).  Ms. Abreu

testified that she did not witness Plaintiff fall.  (Doc. 30-6 at 27:4–27:13).  Rather,

Ms. Abreu stated that she heard a large "boom" sound and her son screaming,

which caused her to look through the open doorway to the bathroom, where she saw

Plaintiff lying on the ground.  (Doc. 30-6 at 32:8–32:16; Doc. 30-5 at 6:10:40 P.M.).

Ms. Abreu then entered the women's restroom, where she allegedly saw

Plaintiff "lying there . . . unconscious" and vomiting "something green."  (Doc. 30-6

at 32:17–33:2).  According to Ms. Abreu, Plaintiff asked for a garbage can to vomit

into, and Ms. Abreu was able to provide a trash can so that no vomit made it onto

the floor of the restroom.  (Doc. 30-6 at 33:3–33:6).  Ms. Abreu later elaborated that

---

[1] CCTV footage shows Plaintiff entering an alcove with restrooms in two separate instances, roughly twenty minutes apart.  (Doc. 30-5 at 5:45:46 P.M., 6:10:13 P.M.).  According to Plaintiff, in the first instance, she took her grandson to the door of the men's restroom and attempted to convince him to enter alone.  (Doc. 30-4 at 39:1–39:13).  Her grandson refused, and Plaintiff returned to her daughter-in-law to discuss next steps.  (*Id.*).  Plaintiff then returned to the alcove a second time to accompany her grandson to the women's restroom.  (*Id.*).  Plaintiff testified that this was her first time entering the women's restroom during her visit to the Store.  (*Id.* at 41:10–42:17).

Plaintiff was unconscious for "maybe . . . a minute or two" before she awoke and began vomiting. (Doc. 30-6 at 35:12–35:16).

At 6:12 P.M., approximately one minute and thirty seconds after Ms. Abreu entered the women's restroom, a Walmart employee ("Ms. Harkins") arrived at the scene of the incident. (Doc. 30-5 at 6:12:18 P.M.). This employee testified in her deposition that, when she arrived in the women's restroom, she saw Plaintiff "sitting on the floor." (Doc. 30-7 at 35:22–35:25). She further testified that she "didn't see anything on the floor . . . in the restroom," and that "[i]f there had been water on the . . . floor, [she] would have guarded [the] spill until someone came" to prevent someone else from falling. (Doc. 30-7 at 36:13–37:2).

Instead, Ms. Harkins left to alert a manager of the issue. (Doc. 30-7 at 33:4–17; Doc. 30-5 at 6:12:24 P.M.). Ms. Harkins notified another Walmart employee, Shaquanda Brown ("Ms. Brown"), of the incident. (Doc. 30-8 at 16:15–16:18, 17:5–18:5). Ms. Brown entered the women's restroom at 6:13 P.M. and saw Plaintiff sitting on the floor against the wall. (Doc. 30-5 at 16:15–16:18, 18:6–18:13; Doc. 30-5 at 6:13:09 P.M.). Ms. Brown did not observe any signs of physical injury to Plaintiff. (Doc. 30-5 at 18:24–19:10).

Plaintiff testified that she saw a Walmart employee, Breviles Loralus ("Mr. Loralus"), take photos after the incident but before anyone cleaned the floor. (Doc. 30-4 at 53:22–54:24; Doc. 30-6 at 42:10–42:14, 71:3–71:5). The parties provided the following photos, which Mr. Loralus took on the day of the incident:[2]

---

[2] None of the photographs provided by Plaintiff were taken on the day of the incident. (Doc. 30-6 at 78:12–78:18). Defendant also provided CCTV footage from the date and time of the incident, but the





footage does not show the inside of the restroom where the incident occurred.







(Doc. 35-14 at 1–3).

Plaintiff admits in her Response to Defendant's Motion for Summary Judgment that these photos "show where [she] slipped" but argues that they do not represent the conditions that caused Plaintiff's fall because her clothes "absorbed much of the water." (Doc. 35 at 8–9). Plaintiff argues that this is demonstrated by "wet paper towels" in the photographs. (*Id.* at 9). The Court has carefully reviewed the photos. They depict a floor with three small scraps of what appears to be either paper towel or toilet paper.[3] Two of the scraps of paper appear to be dry. The third scrap of paper is partially obscured by an employee name tag.[4] This scrap of paper

---

[3] Plaintiff did not allege that paper towels constituted a dangerous condition in this case. Instead, she specified that she "slipped in a puddle of liquid . . . causing her to fall hard to the ground," and that this puddle of liquid was the dangerous condition motivating her claim. (Doc. 3 at ¶ 15–16; Doc. 28-4 at 54:2–54:4; Doc. 28-7 at 38:10–38:15). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff,* 274 F.App'x 839, 841 (11th Cir. 2008) (quoting *Allen v. Tyson Foods Inc.,* 121 F.3d 642, 646 (11th Cir.1997) (internal quotation marks omitted)). Because Plaintiff does not allege that the paper towel constituted a dangerous condition, the presence of paper towel does not constitute a material fact in this case. (*See id.*). However, characteristics of the paper towel are relevant for determining whether the dangerous condition Plaintiff complained of—a wet floor—was present.

has a dark splotch in its center, suggesting it was either damp or dirty.  Notably,

the floor otherwise appears dry.  No droplets or puddles of water are visible in the

image.  The floor did not have dirt, footprints, or any other marks on it.  (*See* Doc.

35-14 at 1–3; Doc. 28-4 at 49:3–49:10).

The testimony in this case also indicates that the floor was dry.  Plaintiff

argues that the photos provided by Mr. Loralus, which depict a dry floor, do not

"best represent the conditions that caused [her] fall" because her clothes absorbed

much of the liquid. (Doc. 33 at ¶ 7; *see* Doc. 28-7 at 37:17–37:24).  Plaintiff testified

that she did not see anything on the floor of the women's restroom until after she

slipped (Doc. 28-4 at 44:7–44:9, 45:4–45:7).  While Plaintiff and Ms. Abreu describe

the wetness of the floor differently—Plaintiff testified that there were "puddles of

one foot" (Doc. 28-4 at 48:25) "spread all over the floor" (*id.* at 46:17–46:21), while

Ms. Abreu testified that there were "droplets" ranging from the size of a quarter to

the size of an average person's palm (Doc. 28-7 at 35:20–37:2)—both Plaintiff and

Ms. Abreu testified that the floor was not cleaned between the time of Plaintiff's fall

and when Mr. Loralus photographed the scene (Doc. 28-4 at 53:17–53:24; Doc. 28-7

at 69:24–70:5).  Thus, for Plaintiff's account to be accurate, Plaintiff's clothes would

have had to seep up all of the liquid on the floor in the time between her fall and

Mr. Loralus photographing the scene.  Testimony from other witnesses further

refutes this.  The first Walmart employee who arrived at the scene testified that she

"didn't see anything on the floor . . . in the restroom," and that "[i]f there had been

water on the . . . floor, [she] would have guarded [the] spill until someone came" to

7

prevent someone else from falling. (Doc. 30-7 at 36:13–37:2). Mr. Loralus testified that he would not have placed his name tag on the ground for the photographs if there had been water on the floor. (*Id.* at 23:7–24:21). The photographic evidence, in addition to the testimony in this case, leads the Court to conclude that the floor was dry after Plaintiff's fall.

The parties agree that Plaintiff was a business invitee during the incident (Doc. 3 at 14; Doc. 4 at 14) and that Defendant owed a duty to Plaintiff (Doc. 3 at 10, 12–14, 19; Doc. 4 at 10, 12–14, 19). However, Defendant contends in its Motion for Summary Judgment that even assuming that a dangerous condition existed, it had no actual or constructive notice of the allegedly dangerous condition and that Plaintiff therefore cannot establish a claim for negligence as a matter of law. (Doc. 30 at 2).

## LEGAL STANDARD

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A district court must grant a motion for summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1299 (11th Cir. 2018) (citation and internal quotation marks omitted). An issue is "genuine" if a rational trier of fact, viewing all of the record evidence,

could find in favor of the nonmoving party. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).

In ruling on a motion for summary judgment, courts must "resolve all ambiguities and draw reasonable factual inferences from the evidence in the non-movant's favor." *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1268 (11th Cir. 2014) (citation and internal quotation marks omitted). Both the Supreme Court and the Eleventh Circuit have addressed video evidence in the context of this summary judgment standard.

In *Scott v. Harris*, 550 U.S. 372, 378 (2007), the Supreme Court found error in the lower court's reliance on the plaintiff's (there, the non-movant's) version of events because the "videotape quite clearly contradict[ed] the version of the story told by" the plaintiff. After addressing what the videotape showed in that case, the Supreme Court returned to the summary judgment standard and explained:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

adopt that version of the facts for purposes of ruling on a motion for summary judgment.

That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life. Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Id.* at 380–81 (citations omitted).

Following *Scott*, the Eleventh Circuit explained that it views the facts in light of video evidence "to the extent that it squarely contradicts with [non-movant's] testimonial descriptions." *Baxter v. Roberts*, 54 F.4th 1241, 1257 (11th Cir. 2022). Indeed, the Eleventh Circuit has stated that it has "repeatedly applied [a] preference rule in affirming summary judgment based on objective evidence notwithstanding the presence of some contradictory testimony from the nonmovant elsewhere in the record." *Id.* at 1258 n.12. That said, "[w]here the videos do not answer all the questions or resolve all the details of the encounter, we view the evidence in the light most favorable to [the non-moving party]." *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1269 (11th Cir. 2021).

## DISCUSSION

I.    **Defendant has established that there is no genuine issue of material fact as to Plaintiff's negligence claim.**

Based on the circumstances of Plaintiff's fall gleaned from the video, photographs, testimony, and other summary judgment evidence, the Court determines that summary judgment for Defendant is warranted.

To establish negligence under Florida law, a plaintiff must show a duty, a

breach of that duty, causation, and damages.  *Clay Elec. Co-op., Inc. v. Johnson*, 873

So. 2d 1182, 1185 (Fla. 2003).[5]  The parties agree that Plaintiff was an invitee of

Walmart.  (Doc. 3 at 14; Doc. 4 at 14); *see also Post v. Lunney*, 261 So. 2d 146, 147–

49 (Fla. 1972) (defining an "invitee").

As to the duty element, Florida law prescribes that "'[t]he duty of the

landowner to a business invitee is to maintain the premises in a reasonably safe

condition and to warn the invitee of latent perils which are known or should be

known to the owner but which are not known to the invitee or which, by the exercise

of due care could not be known to him.'"  *Wilson-Greene v. City of Miami*, 208 So. 3d

1271, 1274 (Fla. 3d DCA 2017) (quoting *Storr v. Proctor*, 490 So. 2d 135, 136 (Fla.

3d DCA 1986)).  Plaintiff alleged in her Complaint that Defendant breached both

duties.  (Doc. 3 at ¶ 19).

Turning to the breach element, under Florida statutory law, "where a

business invitee slips and falls on a 'transitory substance' in a business

establishment . . . proof of the breach element of the claim against an owner of the

establishment is statutorily constrained by section 768.0755 of the Florida

Statutes."  *Encarnacion v. Lifemark Hosps. of Fla.*, 211 So. 3d 275, 278 (Fla. 3d

DCA 2017).  Specifically, Florida Statute § 768.0755 requires the following in

relevant part:

> (1) If a person slips and falls on a transitory foreign substance in a
> business establishment, the injured person must prove that the

---

[5] Florida's substantive law applies to this diversity case.  *See, e.g., Pendergast v. Sprint Nextel Corp.*,
592 F.3d 1119, 1132–33 (11th Cir. 2010).

business establishment had actual or constructive knowledge of the
dangerous condition and should have taken action to remedy it.
Constructive knowledge may be proven by circumstantial evidence
showing that:

> (a) The dangerous condition existed for such a length of time
> that, in the exercise of ordinary care, the business establishment
> should have known of the condition; or

> (b) The condition occurred with regularity and was therefore
> foreseeable.

(2) This section does not affect any common-law duty of care owed by a person
or entity in possession or control of a business premises.

Fla. Stat. § 768.0755 (2017).  In all events, Florida courts have held that section

768.0755(1) "does not create any new element of a cause of action for negligence."

*Kenz v. Miami-Dade Cnty.*, 116 So. 3d 461, 464 (Fla. 3d DCA 2013).  Instead, it

merely "codifies a means and method by which a plaintiff shows that the defendant-

business establishment has breached its duty of care."  *Id.* (emphasis omitted)

(citing *Delgado v. Laundromax, Inc.*, 65 So. 3d 1087, 1089 n.1 (Fla. 3d DCA 2011)).

Thus, Defendant is only liable to Plaintiff if it had actual or constructive notice of

the alleged dangerous condition.  *See* Fla. Stat. § 768.0755 (2017).

### A. Actual Notice

As previously noted, to find a breach of a duty owed to a business invitee,

section 768.0755 requires proof of either actual or constructive knowledge of the

condition that caused injury to the business invitee.  Fla. Stat. § 768.0755 (2017).

Plaintiff argues that the testimony of Defendant's corporate representative,

Heather Marie Zilen ("Ms. Zilen"), contains evidence of Defendant's "actual

knowledge" of the dangerous condition sufficient to avoid summary judgment. (*See* Doc. 35 at ¶ 3).

Specifically, Plaintiff argues that Ms. Zilen's acknowledgment that she has observed pieces of paper towel on the floors of Walmarts in other instances (Doc. 35-6 at 87:6–87:17), that paper towels can be a slip hazard (*id.* at 87:18–87:23), and that Walmart does not employ bathroom attendants to resolve this issue (*id.* at 40:25–41:22), which Plaintiff contends constitutes notice of the allegedly dangerous condition present in this case. (Doc. 35 at ¶ 3). Plaintiff also argues that Walmart's use of floormats in some parts of the store but not in the bathroom demonstrates the requisite notice in this case. (Doc. 35 at ¶ 3).

"Actual knowledge of a dangerous condition exists when a business owner's employees or agents know of or create the dangerous condition." *Palavicini v. Wal-Mart Stores E., LP*, 787 F. App'x at 1010 (11th Cir. 2019) (citing *Barbour v. Brinker Fla., Inc.*, 801 So. 2d 953, 957 (Fla. 5th DCA 2001)). Defendant's acknowledgment that paper towels may present a slip hazard and its use of floormats to address other slip hazards in other areas of its stores did nothing to demonstrate actual notice of the allegedly dangerous condition present in this case. Plaintiff did not allege that she slipped on paper towel; instead, she alleged that she "slipped in a puddle of liquid . . . causing her to fall hard to the ground." (Doc. 3 at ¶ 15; Doc. 28-4 at 54:2–54:4; Doc. 28-7 at 38:10–38:15). There is no evidence that Defendant or any of its employees knew about the allegedly wet floor in the women's restroom on

13

the date of the incident.  Thus, there is no evidence that Defendant is liable on the

theory that it had *actual notice* of a dangerous condition and failed to correct it.

### B. Constructive Notice

To establish constructive notice of a dangerous condition under Florida

Statute § 768.0755(1), the record must contain evidence demonstrating either (a)

that the water spill existed for such a length of time that, in the exercise of ordinary

care, Defendant should have known about the spill; or (b) water spills in the area of

the incident occurred with regularity and therefore were foreseeable.  *See* Fla. Stat.

§ 768.0755(1).  The Court finds that the record is devoid of such evidence.

Plaintiff fails to point to any record evidence identifying the type of liquid

that caused the incident, how long it was on the floor, or where it came from.

Plaintiff testified in her deposition that "[t]he floor was wet," but "[n]ot like after

some cleaning was done."  (Doc. 30-4 at 46:2–46:8).  When asked why Plaintiff

believed the liquid was water, Plaintiff simply responded, "Well, because it was a

liquid."  (Doc. 30-4 at 47:18–47:23).  Plaintiff cannot establish that Defendant

should have known about the presence of an unknown liquid that appeared at an

unknown time from an unknown cause.  Thus, even assuming that a spill existed,

that constituted a dangerous condition, nothing in the record demonstrates that the

spill "existed for such a length of time that, in the exercise of ordinary care,

[Defendant] should have known of [it]."  *See* Fla. Stat. § 768.0755(1).

Florida courts have granted summary judgment where, as here, transitory

liquids present on the ground/floor near where the plaintiff slipped and fell

14

appeared without dirt, grocery cart wheel marks, or footprints.  Those courts have

reasoned that this is one indicator that any liquid present had not been there for

such a duration to place the business on notice of a potentially dangerous condition.

*See Mashni v. Lasalle Partners Mgmt. Ltd.*, 842 So. 2d 1035, 1037 (Fla. 4th DCA

2003) (noting that a dirty puddle of liquid in a business's restroom, for example, was

sufficient to preclude summary judgment on the issue of constructive notice, and

reasoning, "Even though the dirt could have been created by Mashni's fall, . . . the

fact that the water was dirty could also create an inference that it was on the floor

for a period of time sufficient to create constructive notice."); *Winn-Dixie Stores, Inc.*

*v. Guenther*, 395 So. 2d 244, 246 (Fla. 3d DCA 1981) ("[T]estimony that the liquid

was dirty and scuffed and had several tracks running through it was, in our

opinion, adequate to impute constructive notice of the hazardous condition to the

store manager.").

Additionally, nothing in the record indicates that "the condition occurred with

regularity and was therefore foreseeable." *Id.*  To the contrary, record evidence

indicates that no substantially similar incidents occurred in the women's restroom

within the six months prior to the incident.  (Doc. 30-9 at ¶ 14).

Thus, applying section 768.0755(1), the Court concludes that, even viewing

the facts in the light most favorable to Plaintiff, she has not shown either actual or

constructive notice of the dangerous condition.  As a result, the Court finds that

Defendant is entitled to summary judgment.

### C. Mode of Operation Theory of Liability

Even if the Court read Plaintiff's Amended Complaint as alleging a
negligence claim based on a "mode of operation" theory of liability, such a claim
would fail.  That theory is articulated (though not expressly labeled) in the
Amended Complaint as follows: Plaintiff alleges that Defendant "[n]egligently
fail[ed] to properly equip, instruct, direct, train, or supervise its employees";
"[n]egligently fail[ed] to have adequate staff on duty assigned to the task of
inspecting and maintaining the woman's restroom for dangerous conditions";
"[n]egligently fail[ed] to have adequate policies in place to identify dangerous
conditions within the women's bathroom or the plumbing therein that were within
Defendant's control or were created by Defendant"; and "[n]egligently select[ed] and
us[ed] flooring that failed to properly drain, disperse, or dissipate liquid
substances."  (Doc. 3 at ¶ 20(d)–(e), 20(h), 20(l)).  In *Owens v. Publix Supermarkets,
Inc.*, 802 So. 2d 315, 323 (Fla. 2001), the Supreme Court of Florida concluded that
"modern-day supermarkets, self-service marts, cafeterias, fast-food restaurants and
other business premises should be aware of the potentially hazardous conditions
that arise from the way in which they conduct their business."  Accordingly, the
court held as follows:

> If the evidence establishes a specific negligent mode of operation such that
> the premises owner could reasonably anticipate that dangerous conditions
> would arise as a result of its mode of operation, then whether the owner had
> actual or constructive knowledge of the specific transitory foreign substance
> is not an issue. The dispositive issue is whether the specific method of
> operation was negligent and whether the accident occurred as a result of that
> negligence.

16

*Id.* at 332; *see also Schaap v. Publix Supermarkets, Inc.*, 579 So. 2d 831, 834 (Fla.
1st DCA 1991).

However, in 2010, the Florida Legislature enacted section 768.0755, which
eliminated section 768.0755's mode of operation basis for slip-and-fall negligence
cases. *See Pembroke Lakes Mall Ltd. v. McGruder*, 137 So. 3d 418, 426 (Fla. 4th
DCA 2014). The Florida Third District Court of Appeal succinctly explained that
section 768.0755 eliminated section 768.0710's mode of operation mode of recovery
as follows:

> The most significant change between sections 768.0710
> and 768.0755 concerned prior notice of a dangerous
> condition. The older 2002 statute expressly stated actual
> or constructive notice was not "a required element of proof
> to this claim," but the new 2010 statute expressly stated
> the plaintiff "must prove that the business establishment
> had actual or constructive knowledge of the dangerous
> condition." *Additionally, the new statute does not contain
> any language regarding the owner's negligent
> maintenance, inspection, repair, warning, or mode of
> operation.*
>                          * * *
>
> Under the 2002 statute, a plaintiff could succeed in a slip
> and fall case by showing "the business premises acted
> negligently by failing to exercise reasonable care in the
> maintenance, inspection, repair, warning, or mode of
> operation of the business premises," without showing the
> business had actual or constructive knowledge of the
> transitory foreign substance. *Under the 2010 statute,
> however, the same plaintiff would be unable to successfully
> assert such a cause of action, no matter how persuasive or
> compelling the evidence the plaintiff had in support of the
> claim.*

*Pembroke Lakes Mall Ltd.*, 137 So. 3d at 426 (emphases added; citations omitted).

Because section 768.0755 controls and eliminates the negligent mode of operation theory of liability, Plaintiff cannot maintain a cause of action against Defendant based on the negligent mode of operation allegations as pleaded in the Amended Complaint.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (Doc. 30) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly, terminate all deadlines, deny any pending motions as moot, and close the case.

**ORDERED** at Fort Myers, Florida on March 4, 2025.

_____

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE